[Cite as *In re A.C.*, 2024-Ohio-1661.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.C., A MINOR CHILD. | : | APPEAL NOS. C-230359 |
| | | C-230360 |
| | : | C-230361 |
| | | TRIAL NOS. 19-005532X |
| | : | 19-003199X |
| | | 19-003198X |
| | : | *O P I N I O N.* |

Appeals From:   Hamilton County Juvenile Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal: May 1, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellant State of Ohio,

Office of the Ohio Public Defender and *Timothy B. Hackett*, Assistant State Public Defender, for Defendant-Appellee A.C.

**KINSLEY, Judge.**

{¶1} Plaintiff-appellant the state of Ohio appeals from the trial court's decision granting defendant-appellee A.C.'s motion for early judicial release from the custody of the Department of Youth Services ("DYS"). As an initial question, the parties dispute our jurisdiction to consider these appeals. Because the state sought leave to appeal from final appealable orders under R.C. 2505.02(B)(2), we have jurisdiction to resolve these cases. We do so by holding that, on the specific record before us, the juvenile court had discretion to grant early judicial release, because it was not a party to the plea agreement between the state and A.C. that limited A.C.'s ability to receive judicial release and because no evidence exists in the record that the juvenile court adopted this provision at A.C.'s disposition. We therefore affirm the judgments of the juvenile court.

### *Factual and Procedural Background*

{¶2} The charges against A.C. arose from his involvement in an armed robbery. The parties negotiated a plea agreement, but A.C. requested additional time at a December 18, 2019 hearing to review its terms before agreeing on the record. Five days later, on December 23, 2019, the parties entered a written plea agreement that was signed by A.C., his counsel, and the prosecutor. Under the terms of the written agreement, A.C. agreed to admit to involuntary manslaughter, aggravated robbery, and felonious assault, with gun specifications as to each charge. The parties contemplated a disposition under which A.C. would be committed to DYS for a period of 48 months to his 21st birthday.

{¶3} In addition, the written plea agreement contained the following provision as to A.C.'s ability to receive early release from DYS:

2

I also understand that I am freely and voluntarily agreeing as a condition of this agreed plea with the State that I will NOT receive ANY form of early release during the ENTIRE TERM OF MY INCARCERATION. I understand that I am freely and voluntarily agreeing that I will serve the entire term of incarceration listed above and that this Court will not reduce my sentence or release me early in any way. I understand and freely and voluntarily agree that this Court will deny any motion for any type of early release filed by me or on my behalf without a hearing. I understand and freely and voluntarily agree that, as a result of this agreed plea, this Court has no discretion to even consider any motion for any type of early release filed by me or on my behalf, and will deny any motion for any type of early release filed by me or on my behalf without any further consideration.

{¶4} The juvenile court entered judgment entries on December 23, 2019, reflecting that A.C. admitted the offenses that day as contemplated by the plea agreement. According to the judgment entries, the juvenile court accepted A.C.'s admissions to the offenses and reviewed a relevant victim impact statement. The judgment entries do not specifically reference the provision in the written plea agreement regarding A.C.'s ability to receive early release. We lack a transcript in the record of the December 23, 2019 hearing, so we have no information as to whether the juvenile court reviewed the early release provision with A.C. or otherwise verbally adopted it prior to entering judgment against him.

{¶5} A.C.'s dispositions were entered the same day as his plea. The juvenile court imposed the agreed-upon dispositions: an aggregate commitment to DYS of 48

months to A.C.'s 21st birthday. Additionally, the juvenile court found that A.C. was a serious youthful offender ("SYO") and sentenced A.C. to an aggregate prison term of 18 years in the Department of Rehabilitation and Correction, which it stayed pending his successful completion of A.C.'s DYS commitment.

{¶6} A.C. moved for early judicial release from DYS on November 19, 2021, which the juvenile court denied. He moved for early judicial release again on August 30, 2022. The juvenile court held a hearing on A.C.'s motion on June 6, 2023.

{¶7} At the hearing, A.C.'s counsel explained that early judicial release was warranted given A.C.'s significant progress at DYS. His counsel further explained that A.C. had completed substance abuse programming and individual therapy. A.C. had also graduated from high school and started taking college courses. He had completed over 426 hours of community service. Additionally, his parole officer testified that A.C. was a leader at DYS, very respectful of staff, and always willing to assist. Staff from DYS also testified to A.C.'s respectful and thoughtful demeanor. A.C.'s mentor further testified that A.C. had matured and taken full advantage of the opportunities presented to him at DYS. A.C.'s mother also testified that A.C. could live with her upon release and that he would abide by her rules.

{¶8} The state argued that the time that A.C. had already served was not enough for rehabilitation and accountability. When the juvenile court inquired as to why that time was insufficient, the state maintained that there was more that A.C. could and should do, without specifically describing any specific programming remaining for A.C. to complete.

{¶9} In resolving A.C.'s early release motion, the juvenile court found that, as a minor, A.C. was not capable of entering into the plea agreement under contract law.

The juvenile court granted A.C.'s motion for early judicial release and noted that his SYO sentence remained pending until A.C. turned 21.

{¶10} The state moved for leave to appeal under R.C. 2945.67(A). The state proposed two assignments of error: (1) the juvenile court erred when it granted early judicial release contrary to the plea agreement between the parties that was adopted by the juvenile court; and (2) the juvenile court erred when it held a hearing on A.C.'s motion without giving any of the victims a meaningful opportunity to attend the hearing or to make a statement.

{¶11} We granted the state's motion as to the first proposed assignment of error. But we denied the state's motion as to the second proposed assignment of error, because the state did not show a probability that the claimed error occurred. We also requested that the parties address the issue of whether the state's appeal by leave of court must be from a final appealable order. The parties briefed this issue at our request, as well as the state's assignment of error. We consider each issue in turn.

### Final Appealable Order

{¶12} The state sought leave to appeal under R.C. 2945.67(A). This statute permits the state to "appeal as a matter of right any decision of a trial court in a criminal case, or any decision of a juvenile court in a delinquency case, which grants a motion to dismiss all or any part of an indictment, complaint, information, a motion to suppress evidence, or a motion for the return of seized property or grants post-conviction relief." For any other decision, except the final verdict, the state may appeal by leave of the court. *See* R.C. 2945.67(A). Notably, the statute does not specify whether an appeal by leave of court must be from a final appealable order.

{¶13} Ohio courts have been inconsistent as to this issue, requiring final appealable orders as a prerequisite to leave under R.C. 2945.67(A) in some cases and dispensing with the finality requirement in others. *See State v. Jones*, 2017-Ohio-5758, 94 N.E.3d 971, ¶ 9 (2d Dist.). Because we conclude that the state sought leave to appeal from final appealable orders under R.C. 2505.02(B)(2) in this case, we do not need to resolve the broader question of whether R.C. 2945.67(A) excuses the finality requirement. The state has met that requirement here, whether it needed to or not.

{¶14} R.C. 2502.02(B)(2) provides that an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment constitutes a final appealable order. Judicial release proceedings are undoubtedly special proceedings. *See State v. Ogle*, 4th Dist. Hocking No. 16CA22, 2017-Ohio-869, ¶ 8. Thus, that component of finality under R.C. 2502.02(B)(2) is easily established.

{¶15} With regard to whether a substantial right is affected in this case, R.C. 2505.02(A)(1) defines a substantial right as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." "An order affects a substantial right for the purposes of R.C. 2505.02(B)(2) only if an immediate appeal is necessary to protect the right effectively." *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 7.

{¶16} The state identified its right to enforce the plea agreement as the substantial right that was affected by the juvenile court's order. We agree. Because the state is seeking to have its benefit of the bargain enforced under contract law, and

6

that is a right afforded under the common law, the state has identified a substantial right that meets the requirements of R.C. 2505.02(A)(1). Accordingly, the juvenile court's early release order affected the state's substantial rights in a special proceeding under R.C. 2505.02(B)(2), and the state therefore sought leave to appeal from final appealable orders. We therefore have jurisdiction to proceed to the merits of the state's assignment of error.

### *Breach of Plea Agreement*

{¶17} In its sole assignment of error, the state argues the juvenile court erred in granting A.C. early judicial release in contravention of the plea agreement. We review decisions granting early release for an abuse of discretion. *See In re G.S.*, 8th Dist. Cuyahoga No. 86832, 2006-Ohio-3161, ¶ 10.

{¶18} The state advances several arguments as to why the juvenile court abused its discretion in agreeing to release A.C. from DYS before the expiration of his 48-month minimum commitment. First, the state argues that the juvenile court erred in reasoning that, as a minor, A.C. could not enter a contractual agreement. The state is correct. Under well-settled Ohio law, minors are indeed competent to enter into plea agreements in delinquency cases. *State v. Rafferty*, 9th Dist. Summit No. 26724, 2015-Ohio-1629, ¶ 65 (collecting cases).

{¶19} But this does not end the inquiry, as we must examine the terms of A.C.'s plea agreement and the scope of the juvenile court's discretion to determine whether the order granting A.C. early release actually constituted a breach. "[G]enerally speaking, a trial court is not bound by a recommended sentence and enjoys the discretion to reject a plea agreement or impose a different sentence." *State v. Shaw*, 1st Dist. Hamilton No. C- 230089, 2023-Ohio-3230, ¶ 6. But if the trial court involves

itself in the plea negotiations or agrees to the terms of the agreement, it is bound by the plea agreement. *State v. Reynolds*, 8th Dist. Cuyahoga No. 106979, 2019-Ohio-630, ¶ 11; *see State v. Vargyas*, 6th Dist. Wood No. WD-20-068, 2021-Ohio-3383, ¶ 19; *State v. Vari*, 7th Dist. Mahoning No. 07-MA-142, 2010-Ohio-1300, ¶ 24; *State v. Carter*, 5th Dist. Muskingum No. CT2006-Ohio-0027, 2006-Ohio-5822, ¶ 7. To become bound by the state's negotiated plea with a defendant in this manner, a trial court must give the defendant specific assurances on the record. *Id.* at ¶ 7.

{¶20} The state contends that the juvenile court breached the terms of A.C.'s plea agreement by granting A.C.'s motion for early release. There are several problems with this argument.

{¶21} For one, the plea agreement was exclusively executed between and signed by A.C. and the state. On the record before us, we see no evidence that the juvenile court intended to be bound by its terms. In its judgment entries, the juvenile court did indicate that the entries were made "in accordance with the agreed plea * * * attached here to and incorporated by reference here in [sic]." But the entries described A.C.'s disposition without noting any limitations on the juvenile court's authority to grant early judicial release. In this way, the reference to "plea agreement" in the entries appears to be nothing more than an acknowledgment by the juvenile court that A.C.'s disposition complied with the disposition he agreed to in the plea agreement.

{¶22} Moreover, without a transcript of what transpired at the plea hearing, we cannot ascertain whether the juvenile court provided specific assurances to A.C. sufficient to bind the juvenile court to the provision in the plea agreement that restricted A.C. from receiving early release. *See Carter* at ¶ 7 ("a trial court is not bound by the state's negotiated plea agreement with a defendant unless the trial court

8

gives specific assurances"). And "[i]n the absence of transcripts allowing appellate review of an assignment of error, we *must* presume the regularity of the proceedings below." *State v. Cross*, 1st Dist. Hamilton No. C-230179, 2024-Ohio-268, ¶ 10, citing *Knapp v. Edward Laboratories*, 61 Ohio St.3d 197, 199, 400 N.E.2d 384 (1980).

**{¶23}** The terms of the plea agreement do not contradict this conclusion. Under the terms of the plea agreement, A.C. never agreed not to seek early judicial release. Rather, the language of the plea agreement constrained the action of the juvenile court, not A.C. To this end, the early release provision stated that the juvenile court would not reduce A.C.'s sentence or release him early and would deny any motion for early release that A.C. might file without holding a hearing. But without a transcript of the plea hearing, we cannot determine whether the juvenile court actually informed A.C. that it had no authority to grant early judicial release as outlined in the plea agreement. And in the absence of evidence that the juvenile court acquiesced to the early release provision and agreed to be bound by it, we cannot conclude that the juvenile court breached the plea agreement by granting A.C.'s motion for early release.

**{¶24}** This is not to be read as a suggestion that trial courts cannot bind their discretion to grant judicial release by becoming parties to plea agreements. To the contrary, where a more complete record reveals that the trial court intended to be bound by the terms of a plea agreement, a trial court may engage in a breach by acting in violation of what the parties contemplated. But based on the limited record before us in A.C.'s case, we hold that the juvenile court maintained its discretion to grant early release, because there is no evidence that the juvenile court became a party to the plea agreement that limited A.C.'s ability to leave DYS custody early. We therefore overrule the state's assignment of error and affirm the judgments of the juvenile court.

Judgments affirmed.

**CROUSE, J.,** concurs.

**ZAYAS, P.J.,** concurs in part and dissents in part.

**ZAYAS, P.J.,** concurring in part and dissenting in part.

{¶25} I agree that a judgment granting a motion for judicial release constitutes a final appealable order when the breach of a plea agreement is argued. *See State v. Dowler*, 4th Dist. Athens No. 15CA7, 2015-Ohio-5027, ¶ 17 ("[H]olding that the denial of a motion for judicial release affects a substantial right made in a special proceeding and thus constitutes a final appealable order when the state breaches a plea agreement by opposing the judicial release."); *State v. Jimenez*, 9th Dist. Summit No. 24609, 2009-Ohio-4337, ¶ 6 (because the defendant has argued that the plea agreement was breached when the court denied the motion for judicial release, the order is final and appealable).

{¶26} I respectfully dissent because A.C. entered into a binding plea agreement with the state, which the juvenile court approved and incorporated into the judicial entry, where he agreed to serve the entire term of his juvenile disposition, effectively waiving his eligibility for judicial release. Accordingly, the juvenile court erred in granting judicial release and the judgments should be reversed.

{¶27} A.C. negotiated a comprehensive written plea agreement with the state entitled "ENTRY WITHDRAWING PLEA OF GUILTY/NOT GUILTY AND ENTERING AGREED PLEA OF ADMIT/GUILTY WITHDRAWING REQUEST FOR RELINQUISHMENT OF JURISDICTION, PLACING DEFENDANT AT A DEPARTMENT OF YOUTH SERVICES INCARCERATION FACILITY AND IMPOSING A SERIOUS YOUTHFUL OFFENDER DIPOSITION" ("SYO"), herein after the "agreed plea." In the agreed plea, A.C. admitted to the juvenile charges, pled

guilty to the SYO charges, and agreed to the juvenile disposition and the SYO sentence. In exchange, the state agreed not to bind over the cases to adult court, amended the murder charge to involuntary manslaughter, and dismissed a gun specification. Additionally, the agreed plea included an agreed traditional juvenile disposition setting out the agreed juvenile detention periods for each offense, and an agreed SYO dispositional sentence that was "stayed pending the successful completion of the traditional juvenile disposition imposed."

{¶28} As part of the agreed plea, A.C. promised, in two provisions, to "serve the entire term of incarceration" with respect to the agreed juvenile disposition. In the first provision, A.C. agreed that his "ENTIRE TERM OF INCARCERATION will be served ONLY at one of the three following Department of Youth Services Juvenile Correctional Facilities * * *." A.C. further promised that "as a condition of this agreed plea with the state that I will NOT receive ANY form of early release during the ENTIRE TERM OF MY INCARCERATION. I understand that I am freely and voluntarily agreeing that I will serve the entire term of incarceration listed above and that this Court will not reduce my sentence or release early in any way." A.C., his counsel, and the prosecutor signed the written plea agreement which included the extensive disposition and sentencing agreement.

{¶29} The juvenile court approved the agreed plea, including the imposition of the "Agreed Traditional Juvenile Disposition" and the "Agreed Serious Youthful Offender Dispositional Sentence" contained in the plea. The judicial entry reflects that the juvenile disposition was imposed, "All in accordance with the accompanying entry of this date, incorporated herein by reference." The court further stated that the disposition and SYO sentence were, "All in accordance with the agreed plea and

sentencing entry attached here to and incorporated by reference here in." The agreed plea was attached to and incorporated into the judicial entry.

{¶30} Once the court accepted the agreed plea, "it [was] also bound to that agreement." *State v. Elliott*, 2021-Ohio-424, 168 N.E.3d 33, ¶ 11 (1st Dist.). *See State v. Fenderson*, 6th Dist. Erie Nos. E-14-015 and E-14-021, 2015-Ohio-565, ¶ 13 ("When a trial court accepts a plea bargain and makes a promise to impose sentence in a certain manner, consistent with the agreement, it becomes bound by said promise."); *State v. Hitt*, 9th Dist. Summit No. C.A. 29048, 2019-Ohio-2201, ¶ 22 ("Nonetheless, a plea agreement may become binding on the trial court when it accepts a plea bargain and makes a promise to impose sentence in a certain manner, consistent with the agreement."). Here, the juvenile court imposed the agreed disposition and sentence in accordance with the plea and attached the plea to its judicial entry, incorporating and accepting the agreed plea. *See id.* A.C. has not asserted or argued that the juvenile court did not accept the agreed plea.

{¶31} Plea agreements are essential to the prompt disposition of criminal proceedings. *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50. "The intent of the parties to a [plea agreement] resides in the ordinary meaning of the language and terms employed in the agreement." *State v. Lezatte*, 9th Dist. Lorain No. 02CA008131, 2003-Ohio-1472, ¶ 8. "[E]ffect must be given to the intention of the state and the defendant in their plea bargain, and courts should enforce what they perceive to be the terms of the original plea agreement." *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, ¶ 22.

{¶32} Significantly, it is undisputed that A.C. signed an agreed disposition as part of his negotiated plea where he agreed to serve the entire disposition, effectively waiving his eligibility for judicial release. *See, e.g., State v. Sykes*, 8th Dist. Cuyahoga No. 106390, 2018-Ohio-4774, ¶ 4, 24 (Concluding that Sykes was ineligible for judicial release because he agreed to serve his sentence "in totality," and "the trial court accepted the plea agreement in its entirety and stated at sentencing that it was imposing the agreed-upon sentence."); *State v. Drake*, 8th Dist. Cuyahoga Nos. 109883 and 109884, 2021-Ohio-2589, ¶ 21 ("Therefore, we find the terms of Drake's plea agreement with the state expressly required him to serve the agreed sentence for the involuntary manslaughter count, which made his prison term mandatory rendering Drake ineligible for judicial release.").

{¶33} Despite the agreement to serve the entire term of incarceration, A.C. filed a motion seeking judicial release. At the hearing, A.C. acknowledged that as part of his agreed plea, he agreed to forego judicial release. A.C. did not challenge the validity or the enforceability of the agreed plea. Rather, he requested the court to "recognize his significant progress at DYS and grant his judicial release." The state opposed the motion, reminding the court that A.C. agreed to serve the full juvenile sentence and seeking to enforce the agreed plea that was approved by the parties, the witnesses, and the victims.

{¶34} The motion was considered by the juvenile judge that succeeded the judge that had presided over the original plea, disposition, and sentencing hearing. The juvenile court sua sponte determined that children are incapable of entering into contracts and refused to uphold the plea. As the majority correctly acknowledged, "[u]nder well-settled Ohio law, minors are indeed competent to enter into plea

13

agreements in delinquency cases. *State v. Rafferty*, 9th Dist. Summit No. 26724, 2015-Ohio-1629, ¶ 65 (collecting cases)." Because the juvenile court erred in determining the plea was unenforceable, this court should reverse the juvenile court's judgments.

{¶35} Notably, A.C. never challenged the validity or enforceability of the agreed plea, did not appeal the original disposition, did not deny that he violated the terms of the plea, and did not challenge the court's acceptance of the agreed plea. Rather, A.C. argued in his brief that the term is unenforceable because the parties cannot agree to "deprive juvenile courts of their power to grant release," in violation of the separation-of-powers doctrine and public policy. Yet the majority concludes the agreed plea need not be enforced by sua sponte raising two issues that were not argued or briefed by the parties[1]: (1) A.C. did not violate the plea; and (2) the transcript of the plea hearing is necessary to resolve the assignment of error.

{¶36} The majority appears to conclude that A.C. did not violate the agreed plea because he "never agreed not to seek early release." However, A.C. agreed to serve his entire juvenile disposition, rendering him ineligible for judicial release. Where the agreed-upon disposition includes an express condition that the offender will serve the entire term of incarceration, "it becomes a binding contractual term that renders the offender ineligible for judicial release." *Sykes*, 8th Dist. Cuyahoga No. 106390, 2018-Ohio-4774, at ¶ 28.

---

[1] The majority abandons its "role of neutral arbiter of matters the parties present," *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), by injecting new arguments into this case. "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." *NASA v. Nelson,* 562 U.S. 134, 147, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011), fn. 10, quoting *Carducci v. Regan,* 714 F.2d 171, 177, (D.C.Cir.1983). "[W]e cannot write a party's brief, pronounce ourselves convinced by it, and so rule in the party's favor. That's not how an adversarial system of adjudication works." *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir.2013).

{¶37} The majority determines, despite the express language in the agreed plea and judicial entry and the fact that the agreed plea was made part of and filed with the judicial entry, "there is no evidence that the juvenile court became a party to the plea agreement that limited A.C.'s ability to leave DYS custody early."[2] However, as previously discussed, once the court accepted the agreed plea, "it [was] also bound to that agreement." *Elliott*, 2021-Ohio-424, 168 N.E.3d 33, at ¶ 11. Additionally, a trial court speaks through its journal entry. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 15. And here, the entry expressly indicated that the juvenile court imposed the agreed disposition and incorporated the plea agreement by reference into the entry.

{¶38} Moreover, A.C. did not allege that his plea was involuntary or otherwise deficient, necessitating a review of the plea colloquy. To the contrary, during the hearing on the motion for judicial release, A.C. acknowledged to the court that he promised not to seek judicial release as part of his plea. Had A.C. argued that the court modified or rejected the waiver of judicial release during the plea hearing, it was incumbent on A.C. to file the transcript. *See* App.R. 9(B)(5)(b).

{¶39} The majority relies on an inapposite case, *State v. Carter*, 5th Dist. Muskingum No. CT2006-Ohio-0027, 2006-Ohio-5822, to conclude that, "To become bound by the state's negotiated plea with a defendant in this manner, a trial court must give the defendant specific assurances on the record." In *Carter*, the defendant entered into a written plea agreement with the state that included a recommended sentence and an agreement that the state would not oppose judicial release after one

---

[2] The record indicates that the prosecutor, A.C.'s counsel, and the juvenile judge discussed the substance of the agreed plea and "enunciated a plea arrangement that had been agreed to" by the parties. The prosecutor prepared the plea agreement based on those discussions. Thus, the juvenile court participated in the plea negotiations with defense counsel and the prosecutor.

year. *Id.* at ¶ 9-10. The plea made clear that the "Prosecutor's recommendation does <u>not</u> have to be followed by the Court." *Id.* at ¶ 11. When the trial court denied the motion for judicial release, Carter appealed claiming that the trial court breached the plea. *Id.* at ¶ 5-6. Relying solely on the written plea agreement, the court held that the trial court was not bound by the state's recommendation. *Id.* at ¶ 14. The court further noted that no transcript of the plea hearing was provided to establish any oral assurances by the court that contradicted the plea. *Id.* at ¶ 12-14. The court presumed the validity of the plea proceedings, enforced the written plea, and affirmed the denial of the motion. *Id.* at ¶ 13. Notably, if the majority presumed the regularity of the plea proceedings in this case, as the *Carter* court did, it would have enforced the written agreed plea, absent the plea transcript.

{¶40} Even if, as the majority claims, the juvenile court was required to provide "specific assurances to A.C." in addition to accepting the agreed plea, disposition, and sentence, and incorporating the plea into the judicial entry, res judicata bars a challenge to the plea. *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 36 (Kennedy, J., concurring separately), citing *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 59-60. By not filing a direct appeal to challenge any issues related to his original plea colloquy, any challenge to the plea is barred by res judicata. *See State v. Greene*, 3d Dist. Crawford No. 3-20-06, 2020-Ohio-533, ¶ 13. Therefore, the transcript of the plea colloquy is inconsequential to the resolution of this appeal.

{¶41} A.C. negotiated an agreed plea with the state that included an explicit term to serve his entire juvenile disposition. The agreed plea was a valid and enforceable contract that mutually bound the parties to its terms. Accordingly, I would

reverse the judgments of the trial court and remand the cause to the juvenile court to vacate the entries granting judicial release.[3]

Please note:

The court has recorded its own entry on the date of the release of this opinion.

---

[3] Because A.C. breached the agreed plea, whether the judge also failed to abide by the agreed plea need not be determined.