[Cite as *In re Y.S.*, 2025-Ohio-671.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: Y.S. | : | APPEAL NOS. | C-240256 |
| | | | C-240257 |
| | : | | C-240258 |
| | | TRIAL NOS. | 22/152 Z |
| | | | 22/321 Z |
| | : | | 22/322 Z |
| | : | | |
| | : | *O P I N I O N* | |

Appeal From: Hamilton County Juvenile Court

Judgments Appealed From Are: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 28, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellant State of Ohio,

*Elizabeth R. Miller*, Ohio Public Defender, and *Victoria Ferry*, Assistant Public Defender, for Defendant-Appellee Y.S.

**Bock, Judge.**

**{¶1}** In this appeal, we consider whether a juvenile court may bind itself to a plea agreement's dispositional terms. Plaintiff-appellant the State of Ohio argues that the juvenile court chose to bind itself to a plea agreement in which defendant-appellee Y.S. agreed to forego any possibility of judicial release, and that the court violated the agreement when it granted Y.S.'s motions for judicial release. Y.S., on the other hand, argues that the juvenile court acted within its discretion when it granted his motions for judicial release.

**{¶2}** We hold that the juvenile court bound itself to the plea agreement when it signed the agreement, accepted the agreement in its dispositional entries, and explained to Y.S. at the plea hearing that it would deny any motion for judicial release. Because the juvenile court bound itself to the plea agreement, it erred when it granted Y.S.'s motions for judicial release.

**{¶3}** We sustain the State's sole assignment of error and reverse the juvenile court's orders granting Y.S.'s motions for judicial release.

## I.    *Factual and Procedural History*

**{¶4}** In June 2022, Y.S. reached a plea agreement with the State in six delinquency cases. In exchange for Y.S.'s admission of the allegations in three complaints, the State dismissed the three other complaints and withdrew its request to bind over the cases to the adult court.

**{¶5}** The plea agreement in the record was signed by the State, Y.S., Y.S.'s attorney, and the juvenile court. The agreement states, in relevant part,

> [I] understand that I am freely and voluntarily agreeing as a condition
> of the agreed [p]lea with the State that I will NOT receive ANY form of
> early release during the ENTIRE TERM OF MY INCARCERATION. I

understand that I am freely and voluntarily agreeing that I will serve my entire term of incarceration listed above and that this Court will not reduce my sentence or release me early in any way. I understand and freely and voluntarily agree that this Court will deny any motion for any type of early release filed by me or on my behalf without a hearing. I understand and freely and voluntarily agree that as a result of this agreed plea, this court has no discretion to consider any motion for any type of early release filed by me or on my behalf, and will deny any motion for any type of early release filed by me or on my behalf without any hearing or any further consideration.

{¶6} At the plea hearing, the State informed the juvenile court that there was "an agreed disposition to DYS [Department of Youth Services] until the youth reaches the age of 21." During its colloquy, the juvenile court reviewed the consequences of Y.S.'s admissions and the plea agreement. It confirmed that Y.S. understood he would be incarcerated until his 21st birthday and that he agreed to "serve [the] entire term of incarceration at one of these facilities and not apply for early release, and, if you did, it would be denied." The juvenile court accepted his admissions, proceeded to his disposition, and informed the parties that it found "the agreed sentence [] appropriate." The juvenile court imposed an indefinite term of commitment from one year to a maximum period "not to exceed the attainment of his 21st birthday."

{¶7} The juvenile court's three adjudication and disposition orders begin with an explanation that the plea agreement "reached by all parties [] is accepted by the Court." It committed Y.S. to the custody of the Ohio Department of Youth Services ("ODYS") for an indefinite term consisting of a 12-month minimum and a maximum term not to exceed Y.S.'s 21st birthday. The orders were "[a]ll in accordance with the

accompanying entry of this date, incorporated herein by reference." The plea agreement was attached to its entry in the case numbered 22/152 Z.

{¶8}  In November 2023, Y.S. moved for early release. The cases transferred to a new juvenile court judge. At a hearing on Y.S.'s motions, the State asked that the juvenile court "abide by the agreed plea that was put in place, holding [Y.S.] until his 21st birthday." The juvenile court reviewed the adjudication and disposition entries and found "[no]thing in the entry that binds [it] to not granting an early [release]." The juvenile court explained that it "speaks through its entries and these are the ones that were here on these offenses. They don't have any reference to no early releases." After hearing evidence of Y.S.'s rehabilitation, the juvenile court granted Y.S.'s motions and ordered his release from ODYS.

## II.  Analysis

{¶9}  In its sole assignment of error, the State contends that the juvenile court abused its discretion by granting Y.S. judicial release. The State argues that the juvenile court adopted and approved the plea agreement, which bound the juvenile court to the terms of the agreement and limited its authority to grant judicial release.

{¶10} We review the juvenile court's grant of early release for an abuse of discretion. *In re A.C.,* 2024-Ohio-1661, ¶ 17 (1st Dist.), *appeal accepted*, 2024-Ohio-1661. When a juvenile court exercises its discretionary authority in an unreasonable, arbitrary, or unconscionable way, it abuses its discretion. *See Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 34.

{¶11} Courts view plea agreements as "contracts between the State and the defendant." *State v. Elliott*, 2021-Ohio-424, ¶ 8 (1st Dist.). The binding nature of a plea agreement is "implicitly conditioned on the trial court's acceptance of that agreement." *Id.*, quoting *State v. Darnell*, 2003-Ohio-2775, ¶ 7 (4th Dist.). A juvenile

court has discretion to choose whether to accept a plea agreement. *Id.* at ¶ 11. Generally, a juvenile court is not bound to impose a plea agreement's recommended sentence. *Id.* at ¶ 16. A recommended sentence is "'a nonbinding recommendation to the court, which the court is not required to accept or comment on.'" *Id.*, quoting *State v. Harvey*, 2019-Ohio-715, ¶ 7 (8th Dist.).

**{¶12}** Just last year, this court considered whether the juvenile court was bound to an agreed sentence that included a judicial-release clause identical to the one in this case. *In re A.C.*, 2024-Ohio-1661 (1st Dist.) We explained that the juvenile court is bound to an agreed sentence if it "involves itself in the plea negotiations or agrees to the terms of the agreement." *Id* at ¶ 19. To bind itself to the agreement, the juvenile court "must give the defendant specific assurances on the record." *Id.* We affirmed the juvenile court's grant of judicial release in *In re A.C.* due to the lack of evidence on the face of the plea agreement or the juvenile court's entries demonstrating "that the juvenile court intended to be bound by the terms." *Id.* at ¶ 21-22. The plea agreement had been signed by A.C. and the State, and the entries simply incorporated the plea agreement by reference. *Id.* And there was no way of knowing "whether the juvenile court provided specific assurances to A.C. sufficient to bind the juvenile court to the provision in the plea agreement that restricted A.C. from receiving early release" because the State failed to file a transcript of the plea hearing. *Id.* at ¶ 22.

**{¶13}** Y.S.'s plea agreement included an agreed sentence, which is an agreement to be ""'bound to a specific sentence or a sentence . . . within a prescribed range.'"" *Elliott*, 2021-Ohio-424, at ¶ 13 (1st Dist.), quoting *State v. Jackson*, 2020-Ohio-491, ¶ 13 (8th Dist.), quoting *State v. Huffman*, 2018-Ohio-1192, ¶ 17 (8th Dist.). Under the terms of the plea agreement, the State and Y.S. agreed that Y.S. was barred from receiving judicial release because the juvenile court would deny any such motion,

and that Y.S. would remain in the custody of ODYS until his 21st birthday.

{¶14} The State argues that Y.S.'s agreement with the State, the juvenile court's entries, and the transcript in this case demonstrate an intent by the juvenile court to bind itself to the terms of the agreement. We agree.

{¶15} Unlike the plea agreement in *In re A.C.*, the plea agreement here was signed by the juvenile court judge. And unlike the entries in *In re A.C.,* the juvenile court's entries in this case accepted the agreement. Critically, the transcript of the plea hearing contains statements by the juvenile court to Y.S. that it intended to bind itself to the agreement and would deny any motion for judicial release. At the hearing, the juvenile court confirmed that Y.S. understood that any motion for judicial release "would be denied." After accepting his admissions, and before announcing his dispositions, the juvenile court said, "the agreed sentence is appropriate." Under these circumstances, the juvenile court bound itself to the terms of the plea agreement and its grant of judicial release violated the terms of that binding agreement.

{¶16} Y.S. argues that we should affirm the juvenile court's decision to grant him early release for several reasons. He claims that the agreement contravenes a juvenile court's discretionary authority over delinquency dispositions and granting judicial release under R.C. 2152.22 and violates the separation-of-powers doctrine.

{¶17} But as the State points out, Y.S. did not file a direct appeal of his delinquency adjudications and these arguments are barred by res judicata. Res judicata prohibits a party from raising, in any proceeding other than a direct appeal, "any claim [or issue] 'that was raised or could have been raised' in the direct appeal." *State v. Hardman*, 2022-Ohio-3309, ¶ 12 (1st Dist.), quoting *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. Sentencing issues not raised in a direct appeal are barred by res judicata and cannot be raised as a collateral attack on

6

the sentence itself in appeals of decisions denying a motion for resentencing or revoking judicial release. *See State v. Wilhite,* 2007-Ohio-116, ¶ 16 (3d Dist.) (in an appeal of a decision revoking judicial release, a defendant "indirectly challenging the original sentence . . . is barred by the doctrine of res judicata"); *see also State v. Miller*, 2012-Ohio-1922, ¶ 6 (4th Dist.) (in an appeal of a trial court's denial of a motion for resentencing, an allied-offenses argument the defendant "failed to raise . . . in a direct appeal . . . has become res judicata and he cannot challenge his sentence on that basis collaterally through a motion for resentencing").

**{¶18}** Because the juvenile court bound itself to the plea agreement, it erred when it granted Y.S. judicial release. We sustain the State's assignment of error.

### III.    Conclusion

**{¶19}** We sustain the State's sole assignment of error, reverse the juvenile court's orders granting judicial release to Y.S., and remand the case to the juvenile court to vacate its orders granting judicial release.

Judgment reversed and cause remanded.

CROUSE, J., concurs.
ZAYAS, P.J., concurs in judgment only.

**Zayas, P.J.**, concurring in judgment only.

**{¶20}** I concur in the majority's decision to reverse the juvenile court's judgment granting judicial release.  I part ways with the majority, however, because the sole issue in this case is whether the juvenile court erred in failing to enforce the plea agreement.

**{¶21}** "Principals of contract law are generally applicable to the interpretation and enforcement of plea agreements." *State v. Bethel*, 2006-Ohio-4853, ¶ 50.  "It is well accepted that the trial court has the discretion to accept or reject a plea

7

agreement." *In re Disqualification of Mitrovich*, 74 Ohio St.3d 1219, 1220 (1990), citing *City of Akron v. Ragsdale*, 61 Ohio App.2d 107 (1978). Once a plea agreement is accepted by the trial court, it becomes an enforceable contract. *See, e.g., State v. Darnell*, 2003-Ohio-2775, ¶ 9 (4th Dist.) (The defendant and the State did not have an enforceable agreement until the court accepted the plea.); *State v. Jenkins*, 2020-Ohio-1480, ¶ 12 (4th Dist.) ("Until the trial court accepts the plea agreement, the agreement is unenforceable."); *State v. Stanley*, 2002-Ohio-3007, ¶ 41 (7th Dist.) ("The trial court has the discretion to accept or reject a negotiated Crim.R. 11 plea, and the agreement is not binding until accepted by the court."); *Elliott*, 2021-Ohio-424, at ¶ 11 (1st Dist.) ("As a general rule, if the trial court accepts the terms of the plea agreement, it is also bound to that agreement."). By accepting the plea, "the court accepts the underlying plea agreement." *Id.* at ¶ 12, citing *Darnell* at ¶ 8.

**{¶22}** Whether a plea agreement has been breached is a determination that initially rests within the sound discretion of the trial court. *See State v. Matthews*, 8 Ohio App.3d 145, 146 (10th Dist. 1982). "When an allegation is made that a plea agreement has been broken, the [complaining party] must merely show that the agreement was not fulfilled." *State v. Collier*, 2020-Ohio-3033, ¶ 10 (8th Dist.), quoting *State v. Legree*, 61 Ohio App.3d 568, 571 (6th Dist.1988), citing *Santobello v. New York*, 404 U.S. 257, 262 (1971). In the event of a breach, the relief to which the State is entitled includes specific performance. *See Santobello*, 404 U.S. at 263.

**{¶23}** Here, it is undisputed that Y.S. and the State executed a negotiated plea agreement in 2022, and that the juvenile court accepted the plea agreement as memorialized in the adjudication and disposition orders. As part of that agreement, Y.S. agreed that "[he would] NOT receive ANY form of early release," would "serve the entire term of incarceration," and that "this Court will not reduce [his] sentence or

release [him] early in any way." Despite the agreed-upon term, Y.S. filed a motion requesting judicial release. At the hearing, the State reminded the court that Y.S. had agreed to serve his disposition until he was 21 and asked the juvenile court to enforce the plea agreement. The court declined.

**{¶24}** However, the plea agreement was a valid and enforceable contract, which included a provision that Y.S. would forgo judicial release and serve the entire term of incarceration. Consequently, the juvenile court erred in refusing to enforce the plea agreement that it had previously accepted.

Please note:

The court has recorded its entry on the date of the release of this opinion.